[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties in this action for dissolution of marriage were married in Sudbury, Massachusetts on December 15, 1974. The court has jurisdiction by virtue of the fact that the plaintiff lived in the state of Connecticut continuously for at least twelve months immediately prior to the commencement of this action.
There are three minor children who are legal issue of the marriage:
 Gardner Chase Rowbotham II, born September 9, 1975 William Nelson Rowbotham, born May 15, 1977 Samuel Elliot Rowbotham, born August 23, 1987
The marriage has broken down irretrievably and there is no prospect of reconciliation.
A decree of dissolution of the marriage shall enter.
The parties agree that they shall have joint custody of the three children, however they are in conflict concerning the children's primary residence and a schedule for visitation. The court heard copious testimony concerning the behavior and attitudes of the parties as it relates to their capacity to; provide the children with a safe, secure, stable environment and to meet their psychological needs appropriately. The attorney appointed to represent the independent interests of the minor children has informed the court as to the desires of the two older boys, tempered, in the case of the middle son, by advocacy concerning the needs of this boy for stability, consistency, and preservation of good relationships with parents who attempt to meet his needs in widely divergent ways.
This case presents an unusual situation. In 1988 the defendant, who had for some time engaged in extramarital affairs and other conduct that disparaged the plaintiff and the marriage, CT Page 3884 filed a dissolution action. The parties had been living separately in the same town for several months when the defendant experienced congestive heart failure and began a course of emergency treatment leading to a heart transplant operation. The plaintiff agreed to stand by him and help him despite the fact that the marriage had already unravelled, and she did so, including taking the defendant back into the family home and supporting him for a substantial period after the transplantation surgery in February 1989.
Post-surgically, the defendant engaged in excessive behavior and has been more concerned with activities which gratify him than with meeting the needs of his family. While his feeling for his children is considerable, he has not tried to find gainful employment, but has engaged in unpaid volunteer work and dissipated his inherited assets. With regard to his children, he has been a source of fun and adventure and expansive plans, including a fortunately successful venture to obtain a full scholarship to a private boarding school for the oldest son.
He has left to the plaintiff the problems of providing consistency and reliability. The defendant took an overdose of sleeping pills in June 1989, in a manner which appeared calculated to involve the children and to convey to them his need for affection and hope. The medical witnesses gave some support to the explanation that the extreme changes of mood which led to this incident were at least partly the product of the prescription drugs the defendant was taking after the heart transplant surgery.
The defendant has been more stable in 1990 than in 1989, however his announced plans to became a "national spokesman" for people who have been rehabilitated after transplant surgery and his apparent intention to live an expansive and far flung style of life give the court great difficulty in determining a custody arrangement that will be the best interest of children who have already been subjected to a prolonged period of confusion and strain. The following orders are made with the expectation that the parties will both continue to reside in the same town and that they will not be engaged in frequent travel that would result in the children being deprived of a consistent schedule and a stable living environment. The parties do not appear sufficiently amicable to be able to manage in a manner appropriate to the welfare of the children a very flexible arrangement of the sort the defendant apparently envisions, nor is it in the best interest of the children to be put in a position in which they may be frequently disappointed or which thrusts their mother into the role of "back-up" for their father rather than a pursuer of her own plans.
In accordance with the foregoing findings, the court enters CT Page 3885 the following orders:
I. Custody and Residence of Minor Children
A. Gardner Chase Rowbotham II
The parties shall have joint custody. In case of disagreement concerning major activities or choices at issue until this son, known as Chase, reaches age eighteen, the plaintiff shall make the final determination after consultation with the defendant, who shall not without prior written consent of the plaintiff enter into any agreement for expenditures for which the plaintiff might become liable. So long as Chase is a boarding student at a secondary school, his residence shall be at the school during the academic year, and because of his age, maturity, and reported ability to manage the difficulties of such an arrangement, he shall spend school vacations and weekends home, with one or the other of his parents as he shall arrange. The parties shall keep each other informed as to Chase's whereabouts if he neglects to make his plans clear to both parties. The parties shall have equal access to all information concerning his health, school activities, and other activities.
B. William N. Rowbotham
The parties shall have joint custody of William, whose date of birth is May 15, 1977. They shall have equal access with regard to a participation in school activities and access to information concerning his performance at school and his other activities, including access to such health care personnel who shall provide him with services. In case of disagreement concerning the school to be attended or any other major decision concerning William's activities, the plaintiff shall have the authority to make the decision, however she shall not unreasonably refuse to allow William to attend a suitable private secondary school if the defendant provides and sets aside in advance funds sufficient for uninterrupted pursuit of such schooling, in addition to the obligations imposed by this court. The defendant may arrange for appropriate mental health services and cardiac examinations and care for William, however he shall keep the plaintiff fully informed concerning any such services.
The defendant shall have physical custody of William on the following schedule.
Week 1 (commencing with the week in which this Judgment is filed) Thursday immediately after school to Sunday at 5:00 p. m.
Week 2 Sunday at 5:00 p. m. to Thursday immediately after school. CT Page 3886
The plaintiff will have physical custody in the reverse order of weeks according to the same schedule.
The party with physical custody shall be responsible for arranging for William's transportation to school and for supervision of his activities after school. While the parties may agree to vary the above schedule by substituting the week 1 schedule for what was to have been week 2, no such substitution shall take place unless the other party expressly so agrees, and neither shall be under an obligation to agree. In the event that a party does not exercise his or her custody in accordance with the above schedule, and the other party agrees to have custody of William, the party seeking the change shall not be entitled to make up the time lost through adjustments in future time periods but will simply forfeit the custody period involved.
Each party shall permit William reasonable telephone access to the other. Each party shall keep the other informed as to the address and telephone number at which William may be reached.
C. Samuel Elliot Rowbotham
The plaintiff shall have primary physical custody of this child, subject to the following visitation with the defendant:
Thursdays 4:00 p. m. — 8:00 p. m.
Friday at 5:00 p. m. to Sunday at 5:00 p. m. during what has been identified as week 1 of William's schedule, so that these boys will by together on weekends.
Unexercised visitation shall not give rise to an entitlement to substitute time but will simply be forfeited. The parties shall have equal access to information concerning his health and education.
II. Holidays, Birthdays, Vacation
The following exceptions shall apply to the schedules set forth in Section I above:
1. Each child will spend his birthday with the plaintiff, and an equivalent amount of time shall be allotted to the defendant from time within the week of the birthday when the plaintiff would otherwise have had custody of the child pursuant to Section I above.
2. The children will spend Thanksgiving 1990 and alternate Thanksgiving thereafter until 6:00 p. m. with the plaintiff and Thanksgiving 1991 and celebrating Thanksgiving until 6:00 p. m. CT Page 3887 with the defendant.
In the event that the defendant is celebrating Thanksgiving out-of-state during the years in which the children are with him for this holiday, he shall have the children from Wednesday after school to Sunday at 5:00 p. m. or Thanksgiving weekend.
3. The plaintiff shall have the children each Easter weekend, including Good Friday.
4. In 1990 and even-numbered years thereafter, the plaintiff shall have the children from 10:00 p. m. on Christmas Eve through 7:00 p. m. on Christmas Day. In 1990 and even numbered years thereafter the defendant shall have the children on Christmas Eve from 4:30 p. m. to 10:00 p. m.
In 1991 and odd-numbered years thereafter, the defendant shall have the children on Christmas Day from 9:00 a.m. through 7:00 p. m. The parties shall divide into equal periods the period of December 26 through December 31.
5. The defendant shall have the children on New Year's Day and Independence Day and Labor Day in 1991 and odd-numbered years thereafter, and the plaintiff shall have the children on these holidays in even-numbered years.
6. All the children shall spend Father's Day each year from 9:00 a.m. to 6:00 p. m. with the defendant and Mother's Day each year from 9:00 a.m. to 6:00 p. m. with the plaintiff.
7. The defendant shall have the children for the February school vacation and the mother shall them for the April school vacation.
8. The defendant shall have two weeks with all of the children together and one additional week with William in the summer provided he gives the plaintiff written notice by May 1 of the weeks he will take the children or any of them for vacation.
If either party shall elect not to have the children during the holidays, birthdays or vacation periods set forth (or, as to summer vacation, for the periods identified by May 1), the period will be forfeited.
III. Notification
1. If either party changes residence more than twenty miles from Guilford, he or she shall provide the other party with written notification at least ninety (90) days before moving. CT Page 3888
2. Each party shall promptly notify the other of any accident or serious illness of any child while in his or her care.; For purposes of this requirement, "accident" shall mean an event lasting causing upset or injury to the child. "Serious illness" shall mean any circumstance that confines the child to bed for a day or more or requires medical care or medication.
3. Each party shall advise the other of any medication which is administered during the care of any of the children.
IV. Financial Orders
Having considered the evidence in light of the statutory considerations set forth in 46b-81, 82 and 84 C.G.S., and the applicable guidelines concerning child support, the court makes the following orders as to support and distribution of property.
1. The marital residence shall be sold and the proceeds shall be distributed equally to the parties after payment of the first mortgage and the expenses of sale. The plaintiff shall reside in the residence pending sale, and the defendant shall pay half the mortgage and real estate taxes and half the cost of any necessary repairs until the house is sold. If the plaintiff desires to purchase the house, she shall pay the defendant the sum of $75,000.00 for his interest in the property.
2. The plaintiff shall retain her inheritance in the amount of $46,400. and the defendant shall retain his interest in the three trust funds identified in the addendum to his financial affidavit.
3. The plaintiff shall own the Individual Retirement Accounts and retirement benefits identified on her affidavit and the 1987 Volvo.
4. The joint account at Connecticut National Bank and the two certificates of deposit shall be divided equally.
5. The interest in the land in Maine, the security deposit, the Individual Retirement accounts, and the investments (other than those otherwise expressly apportioned in this judgment) identified on the defendant's financial affidavits shall be his property. This award is made on the basis that the investments and the defendant's interest in the land in Maine have, collectively, a value of no more than $20,000.00.
6. Until such time as the defendant ceases to be entitled to social security disability benefits, the plaintiff shall retain $119.09 in such benefits as reflected on her affidavit. In the event that any portion of this amount represents spousal benefits CT Page 3889 that terminate upon dissolution of the marriage, the defendant shall pay the plaintiff that amount as alimony until the house is sold.
7. After the house is sold, the plaintiff and defendant shall pay each other alimony in the amount of one dollar ($1.00) per year.
8. Until such time as the marital residence is sold, the defendant shall pay child support in the amount of $40.00 per week as to William and Samuel and $20.00 per week as to Chase. This departure from the child support guidelines is equitable because of the foregoing order to pay part of the cost of shelter and, because of the assets of the parties. Upon the sale of the house, the defendant shall pay an additional $90.00 per week per child for the support of William and Samuel and an additional $20.00 per week for the support of Chase, that is, total child support in the amount of $300.00 per week. This latter departure from the guidelines is appropriate because of the non-employment assets of the defendant and the children's station and needs.
The defendant shall notify the plaintiff immediately when he commences employment or obtain funds from self-employment, since the court's orders as to child support are made in consideration of the parties' present economic standing only, with the expectation that the defendant will provide support from his assets, on which he has been drawing for his own support since approximately 1988.
9. The plaintiff and defendant shall continue to maintain the life insurance set forth on their financial affidavits and shall each designate the children or a trust established for the benefit of the children as irrevocable beneficiaries.
10. So long as such coverage is available through her employment, the plaintiff shall continue to provide medical and dental insurance for the defendant and for all of the children who are eligible, and the defendant shall reimburse the plaintiff for the portion of the coverage applicable to him. When the defendant becomes employed, if such coverage is available through his employment he shall provide coverage for himself and the minor children or shall pay the plaintiff the premium applicable to coverage for himself and the children in the plan available to the plaintiff. In the event that medical and dental expenses for the children are not fully covered or if medical insurance ceases to be available to any party through employment, the parties shall share equally the costs of all unreimbursed medical, dental, orthodontic, psychological and psychiatric care of each child until he reaches age 18. Neither party shall arrange for elective treatment which would be subject to partial payment by the other CT Page 3890 without prior agreement, which agreement shall not be withheld without adequate reason.
11. Except as otherwise expressly ordered, each party shall be responsible for the liabilities listed on his or her financial affidavit and shall hold the other harmless as to these liabilities.
12. Each party shall be responsible for his or her own counsel fees.
13. The parties' personal property not expressly distributed by the foregoing orders, shall be divided in accordance with the results of mediation under the auspices of Family Relations. If mediation is unsuccessful, the parties shall take turns choosing an item from the disputed items, with the plaintiff having the first choice.
Beverly J. Hodgson, Judge